Levine, J.
(dissenting). I respectfully dissent. The uncontested evidence at the Singer hearing (see, People v Singer, 44 NY2d 241) showed that, no later than September 1981, the police had established defendant’s identity and participation in the April 11, 1981 fatal shootings, at the Shamrock Bar, of the two owners of the bar. The Shamrock bartender had identified all three of the assailants by their nicknames, “Frankie, the Geech,” “Ronnie, the Jew” and “Pepe.” They had been his patrons when he worked at another neighborhood bar in Queens.
The detectives initially investigating the murder were able to ascertain that the Frankie and Ronnie named by the bartender were, respectively, Frank Riccardi and Ronald Barlin. The bartender identified Riccardi from a high school yearbook photograph and Barlin from a mug shot taken on a prior arrest. The FBI furnished two important leads regarding Pepe: that he frequented a certain social club known as an organized crime hangout, and lived at a specified location with a named girlfriend. The bartender identified defendant as Pepe from surveillance photographs of a man visiting the social club. The photographs were then shown to the girlfriend on September 30, 1981, who confirmed that they depicted defendant and disclosed that he was actually her husband, Robert Vernace. She claimed to have no knowledge of defendant’s whereabouts and refused any further cooperation. In addition to the bartender, only one other person present at the Shamrock during the shootings — a Linda Gotti — was able to identify all three assailants from any photographs.
*889 The Homicide Bureau of the Queens County District Attorney’s Office applied in a written memorandum dated March 25, 1982, for authority to present “the case of People v. Barlin, Riccardi and Vernace” for Grand Jury consideration of two counts of murder in the second degree. As the foregoing discussion demonstrates, the evidence against defendant at that time was indistinguishable from that against Riccardi and only differed from the proof inculpating Barlin in the respect that Barlin was the only one of the three suspects arrested and, following the arrest, put in a lineup and identified as a participant in the shootings by Linda Gotti.
It is also undisputed that, for reasons never revealed during the Singer hearing, the Queens County District Attorney’s Office determined to present the murder charges to the Grand Jury only against Riccardi and Barlin. The Grand Jury promptly handed up indictments against them for the Shamrock homicides. Riccardi, however, was never apprehended and remains at large to this day. The case against Barlin was dismissed on motion of the District Attorney in May 1983, when Linda Gotti was unable to identify him at a Wade hearing.
Concededly, for the next 14 years there was a total absence of any action by the prosecutor or any other law enforcement authorities toward establishing defendant’s criminal responsibility for the Shamrock murders. Our case law is well-settled with respect to the effect of such inordinate pre-accusatory prosecutorial delay. In contrast to the holdings of the Supreme Court of the United States under the Due Process Clause of the 14th Amendment (see, United States v Lovasco, 431 US 783, 790, reh denied 434 US 881), we view an unjustified, protracted pre-indictment delay in prosecution, even one far shorter than 14 years, as a deprivation of a defendant’s State constitutional right to due process, without requiring a showing of actual prejudice (see, People v Lesiuk, 81 NY2d 485, 490; People v Fuller, 57 NY2d 152, 159; People v Singer, supra, 44 NY2d, at 253-254; People v Staley, 41 NY2d 789, 791; see also, New York Const, art I, § 6).
Our settled case law also holds that “[wjhere there has been a prolonged delay, we impose a burden on the prosecution to establish good cause” (People v Lesiuk, supra, at 490, citing People v Singer, supra, at 254). At the Singer hearing, the thrust of the prosecution’s justifications for the delay was that defendant was in hiding to avoid arrest and that the evidence was insufficient to indict defendant because the Shamrock bar *890 tender had not been able to identify defendant and had fled or was in hiding by the time of the May 1983 Wade hearing and dismissal of charges in Barlin’s case.
Supreme Court rejected all of those contentions. The court’s findings were well-supported by the evidence at the Singer hearing. In fact, defendant had not absconded. He was seen and photographed at the mobster social club, and observed numerous times after the homicides at another neighborhood bar. Supreme Court specifically found that the bartender was not the witness whose disappearance prompted the prosecution’s dismissal of the indictment against Barlin. That, too, was amply supported by evidence at the Singer hearing. The Assistant District Attorney who prosecuted the case in 1982-1983 testified that the witness who fled had never been interviewed by him and did not appear before the Grand Jury. Undisputably, the bartender had been the key witness before the Grand Jury. Moreover, the detective who had the primary role in the initial investigation of the Shamrock murders testified that, at the time of the Wade hearing and the dismissal of the Barlin indictment, he made no attempt to locate the bartender and “wasn’t told to locate him.”
It follows from the foregoing that the Appellate Division’s conclusion — that “[t]he prosecutor’s original determination not to proceed against the defendant because of the fear and reluctance to cooperate exhibited by the witnesses * * * was clearly made in good faith” (274 AD2d, at 597 [emphasis supplied]) — is tenuous at best, and virtually devoid of any evidentiary support in the record. The prosecutor who actually made the “original determination” not to prosecute defendant did not testify to that effect at the Singer hearing. The finding is also belied by the indisputable fact that recalcitrance of witnesses did not deter the prosecution from formally proceeding against Riccardi and Barlin on the very same evidence.
Even if, however, the majority is correct in holding that there is some evidence of witnesses’ fear or reluctance to testify which would support the Appellate Division’s finding that the prosecution had good cause not to seek the indictment of defendant in 1982-1983, there is absolutely no support in the record and not even a finding by the Appellate Division, that a conscious decision was made, based upon the recalcitrance of witnesses, to defer prosecution of defendant for the next 14 years. Instead, the evidence points only to complete prosecutorial inertia and inattention, as reflected in the loss by the District Attorney’s office of both a gun fired during the homicides and
*891 the complete original file folder on the case. In actuality, it was only by happenstance that the investigation of defendant’s complicity in those murders was resurrected some 16 years after the event. In 1997, a detective on the Queens “Cold Case Homicide Squad” was assigned the task of attempting to locate Riccardi and arrest him pursuant to a then still outstanding homicide warrant. On his own initiative, and without any prompting from the District Attorney’s office, he expanded his investigation to pursue leads on defendant.
There is, thus, a total absence of any justification whatsoever for the pre-accusatory prosecutorial delay here for certainly the better part of the 14 years immediately preceding the indictment of defendant. Such “[s]heer neglect or trifling, as in this case, is not permissible” (People v Staley, supra, 41 NY2d, at 792). In upholding the prosecution of defendant under these circumstances, the majority has created, in effect, a cold case resuscitation exception to the Singer doctrine, which in my view undermines the salient principles of due process/ fundamental fairness underlying Singer and its progeny.
Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Rosenblatt and Graffeo concur; Judge Levine dissents and votes to reverse in an opinion.
Order affirmed in a memorandum.